## 27276. PETTY v. FOLSOM.

Argued June 13, 1972—Decided September 7, 1972—
Rehearing denied September 25, 1972.

*James H. Weeks, John L. Respess, Jr., Heyman & Size-more, William H. Major, Ralph G. McCallum, Jr.,* for appellant.

*Peek, Whaley & Haldi, Glenville Haldi,* for appellee.

Jordan, Justice. ■ The second enumeration of error is directed to the exclusion of testimony by Samuel Ware concerning statements made to him by the defendant about the mental condition of plaintiff. Counsel for the plaintiff sought to show by this witness, who lived about 75 yards from the plaintiff, and who had known her for several years and had worked for her, that after she was admitted to a hospital about the middle of May, 1970, the defendant came to him and asked why the witness had not told him

that Aunt Sara was crazy. On objection this was excluded, as well as proffered testimony by the same witness that three times about the time the plaintiff executed the deed the defendant told him the plaintiff was as crazy as she could be, and that the defendant made a statement to this effect shortly after September 1, 1970.

Counsel for the defendant contended that the testimony was irrelevant and immaterial hearsay without probative value, while counsel for the plaintiff contended that it was an admission against interest by a party. The ruling of the trial judge excluding this evidence indicates that he was of the opinion that the only material evidence would be that which related directly to the competency of the plaintiff, or the lack of it, at the time she executed the deed on August 20, 1970, and that this testimony was not material to the issue.

Extrajudicial statements by an opposing party inconsistent with the position of that party are positive evidence of the fact asserted and are admissible as an exception to the hearsay rule. Green, Georgia Law of Evidence, p. 519, § 233. The testimony here involved meets this test.

But is the evidence material? Green, supra, p. 152, § 61, quoting the Georgia relevancy rule (*Code* § 38-201) as a premise and relying on Georgia case law, defines immaterial evidence in one sense as evidence which has no bearing on any of the issues in the case, and is therefore irrelevant because the proposition which it tends to prove is not provable in the case. He further recognizes that it may be irrelevant in another sense, in that it has no tendency in logic to establish the proposition which it is offered to prove.

In our opinion the testimony here offered is not only logically relevant, but also legally relevant, and therefore material. Its admissibility is controlled by the views expressed in *Thomas v. Lockwood,* 198 Ga. 437, 446 (31 SE2d 791) as follows: "Although, as we have stated, the issue as to contractual capacity is to be determined by the condition of the grantor's mind at the time the deed was executed, we fully recognize the rule that, in determining such an issue, it is

permissible to receive and consider evidence as to the state of the grantor's mind for a reasonable period before and after the transaction under investigation; nor do we say that witnesses might not testify to such a previous state of mind as would authorize a finding against contractual capacity at the time the deed was executed, despite evidence of witnesses who were present at the time and testified that the grantor did have such capacity. [Cits.] The two rules are entirely consistent, and neither of them should be overlooked; the former referring to the ultimate fact, the latter to facts which are evidentiary only."

In 1967 a unanimous court reiterated these rules. *Williams v. Williams,* 223 Ga. 374 (155 SE2d 383). Also, see *Smith v. Smith,* 229 Ga. 28, 30 (189 SE2d 70). The trial judge erred in excluding the testimony here involved.

■ The third, fourth, and fifth enumerations of error are directed to the exclusion of and restrictions concerning the testimony of Dr. Jerome Siegel, a physician. Error is specifically asserted on the refusal to allow this physician to testify that the plaintiff, after being admitted to a hospital on May 15, 1970, was disoriented as to time, place, and person, that in his opinion she was incapable of mentally comprehending her act when she signed the deed, and in further restricting the testimony of this witness to his opinion formed independently of any oral expressions of the plaintiff. Viewed as a whole the testimony of this physician as proffered would include his opinions and diagnoses based on a period of observation and treatment from May 15, 1970 to March, 1972, including a visit to the plaintiff on August 19, 1970, at the nursing home where she signed the deed the following day.

To the extent that the testimony of the witness concerning the mental condition of the plaintiff is admissible in terms of her condition within a reasonable period before and after she signed the deed, admissibility is controlled by the ruling in Division 1 of this opinion.

But the real issue, as discerned from a reading of the transcript, the comments of the trial judge, and the argu-

ments of counsel, is whether the witness should have been allowed to give any opinion at all respecting her mental condition, because he admittedly was not a psychiatrist and because he also stated he had formed his opinions and evaluations on what the plaintiff told him, as well as observation and examination.

Expert opinions on any question of science, skill, trade, or like questions are always admissible. *Code* § 38-1710. A practicing physician is an expert witness on sanity. *Williams v. Trust Co. of Ga.,* 180 Ga. 73 (2) (178 SE 295). It has long been the settled law of this State that the opinion of a physician on sanity is admissible as that of an expert, whether founded on the symptoms and circumstances observed, or as disclosed by the testimony of others. *Potts v. House,* 6 Ga. 324 (2) (50 AD 329). Justice Lumpkin, who delivered the cited opinion in 1849, later observed in 1860 that he "would rely as implicitly upon the opinion of practical men, who form their belief from their observation of the appearance, conduct, and conversation of a person." Continuing, he stated: "One who has seen and conversed with an insane person, and observed his countenance and behavior, has an impression made upon his mind which is incommunicable. This court is committed to the rule, that the jury, in such case, is entitled to the benefit of this *impression.*" *Choice v. State,* 31 Ga. 424, 466. Even though this court in 1926 was unwilling to treat a practicing physician as a mental expert, it nevertheless unequivocally ruled that the witness could testify as to the sanity of an accused based on his conversation with him. *Mars v. State,* 163 Ga. 43 (9) (135 SE 410). What a physician hears from a patient is not hearsay as to the fact of the conversation, and is part of his observation, as distinguished from the truth of the content, or as distinguished from what he hears of the patient from others. Compare *Moore v. State,* 221 Ga. 636 (5) (146 SE2d 895). Also, see the case note on *Argonaut Ins. Co. v. Allen,* 123 Ga. App. 741 (182 SE2d 508), in Georgia State Bar Journal, May 1972, Vol. 8, No. 4, p. 554. This court has also ruled that a practicing physician could state his opin-

ion that the mental development of a 13-year-old girl was below average, based on his examination of her, but the nature and extent of his examination in this respect, and whether it included or was based entirely on conversation as a part of the observation process, is not disclosed in the opinion. *Jeffers v. State,* 145 Ga. 74 (88 SE 571). And based on observation on a specified date, a physician was properly allowed to testify whether a person was capable of realizing what he was doing if he should sign a deed. *Bowman v. Bowman,* 210 Ga. 259 (7) (78 SE2d 801).

In our opinion whether an examining physician is or is not a psychiatrist is a matter which may affect the extent of his expertise in evaluating mental condition, and therefore may affect the weight of any opinion or evaluation, a matter to be determined by a jury, but it does not affect admissibility, nor is admissibility precluded by the fact that his opinions and evaluations are based on conversations with the patient. Under the circumstances here disclosed the trial judge erred in excluding and restricting the testimony of the physician concerning his opinions and diagnoses of the mental condition of the plaintiff.

■ The excluded admissible evidence clearly created a jury issue on the mental capacity of the plaintiff, and the trial judge erred in directing a verdict for the defendant.

*Judgment reversed. All the Justices concur.*