71320. BUTLER v. THE STATE.
(342 SE2d 338)

BANKE, Chief Judge.

Gary Wayne Butler appeals his convictions of statutory rape, aggravated sodomy, and child molestation.

The alleged victim, who was seven years old at the time of trial, testified that she knew that it was important to tell the truth and that she would be in "big bad trouble" if she did not do so. She also promised that she would tell the truth during the trial. When cross-examined with respect to her competency, however, she testified that

she did not know what an oath was. *Held*:

1. The defendant contends that the trial court erred in determining that the child was competent to testify as a witness.

In order for a child to be competent to testify as a witness, it is not necessary that the child know either the meaning of the word "oath" or the penalties for perjury. See *Hill v. State*, 251 Ga. 430 (306 SE2d 653) (1983); *Maynard v. State*, 171 Ga. App. 605 (1) (320 SE2d 806) (1984). The standard of intelligence required to qualify a child as a witness is that she "know and appreciate the fact that as a witness [s]he assumes a solemn and binding obligation to tell the truth relative to the case and concerning such matters as [s]he may be interrogated on, and that if [s]he violates the obligation [s]he is subject to be punished by the court. [Cits.]" *Smith v. State*, 247 Ga. 511 (277 SE2d 53) (1981). The determination of the competency of a witness is a matter within the discretion of the trial court. See generally OCGA § 24-9-7; *Lancaster v. State*, 250 Ga. 871 (2) (301 SE2d 882) (1983); *Hicks v. State*, 175 Ga. App. 243 (1) (333 SE2d 113) (1985). We find no abuse of discretion on the part of the trial court in the present case in determining that the witness was competent to testify. Accord *Maynard v. State*, supra.

2. The defendant contends that the trial court erred in allowing a pediatrician to testify that in her opinion the child had been sexually molested.

The defendant resided in a trailer located behind his parent's house. His mother provided day care at her residence for several young children, including the alleged victim in this case, who, after initially denying several times having ever been alone with the defendant, testified that she had been sexually abused on separate occasions both inside the trailer and in the basement of the house. It was shown that the child had been entrusted to the care of the defendant's mother during different intervals over a 3-year period, the last two being from May through August of 1984 and from October 23 through 30 of 1984. The child molestation was alleged to have occurred on June 5, 1984, and the statutory rape and aggravated sodomy on October 29, 1984. However, the child's testimony was somewhat vague, and the evidence as a whole conflicting, as to the actual dates these offenses had occurred.

Dr. Ann Fleming, a pediatrician who had examined the child on November 2, 1984, testified that she had observed no signs of trauma to the genitalia, although the hymen was not intact and the vaginal opening was a little larger than normal for a child of that age. Her diagnosis of the child's physical condition was "essentially normal"; and she was unable to state, on the basis of the physical examination alone, that any molestation had occurred. She did, however, reach the opinion that molestation had occurred based on statements she had

elicited from the child during the physical examination, and over objection, was allowed to express this opinion to the jury.

"Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible [only] where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman. [Cits.]" *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981). Although Dr. Fleming was more qualified than the average person to express an opinion as to whether the child's ruptured hymen and slightly enlarged vaginal opening were caused by sexual molestation, her opinion that sexual abuse had occurred was not based on such a medical determination but upon her reliance on the child's statements to her, which in turn was based on her belief that "most people who have a lot of training in child development or child psychology understand that children of a certain age who are old enough to know truth from a lie can't lie about anything they don't really have an experience about."

We have been presented with no authority, nor are we aware of any, to the effect that a pediatrician is better qualified to assess the credibility of a child than the average lay person. The resolution of the credibility of all witnesses, including children, rests solely with the jury. See *Parker v. State*, 172 Ga. App. 540 (6) (323 SE2d 826) (1984); *Hicks v. State*, supra at 244. Dr. Fleming's opinion regarding the child's credibility was not one which was beyond the ken of the average layman, and we consequently hold that the trial court erred in allowing it. Given the circumstances of the case, this error cannot be considered harmless. Accord *Fordham v. State*, 254 Ga. 59 (325 SE2d 755) (1985).

3. The defendant contends that the evidence of statutory rape is insufficient because the victim's testimony was not corroborated. As discussed previously, there was at least some evidence that the child's hymen was not intact and that her vaginal opening was larger than normal for a child her age. There was also evidence that, on the day after the statutory rape was alleged to have occurred and again on the following day, after the child complained to her mother about the way the defendant "teased" her, her mother took her to the police station, where the child made a formal complaint with regard to the offenses of which appellant was convicted. A complaint made by a rape victim shortly after the commission of the offense to a person to whom such complaint would normally be made is admissible to corroborate the victim's testimony that a rape was committed. See *Price v. State*, 233 Ga. 332 (2) (211 SE2d 290) (1974); *Copeland v. State*, 160 Ga. App. 786 (2) (287 SE2d 120) (1981). Furthermore, "[s]light circumstances may be sufficient corroboration, and the question of corroboration is one for the jury. [Cit.]" *Brown v. State*, 173 Ga. App. 640, 641 (327

SE2d 515) (1985). See also *Burnett v. State*, 236 Ga. 597 (1) (225 SE2d 28) (1976). We cannot say that there were not at least "slight circumstances" in the present case sufficient to corroborate the victim's testimony.

4. The defendant contends that the evidence is also insufficient to support the child molestation and aggravated sodomy convictions. Although the evidence of guilt was not so overwhelming as to render the error of the trial court discussed in Division 2 of this opinion harmless, we are satisfied that, excluding the inadmissible testimony of the pediatrician, there remains sufficient evidence from which a rational trier of fact could have found beyond reasonable doubt that appellant was guilty of all three offenses. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Brennon v. State*, 253 Ga. 240 (2) (319 SE2d 841) (1984). Nevertheless, because of our holding in Division 2, supra, reversal is required.

*Judgment reversed. Birdsong, P. J., Carley, Sognier, and Pope, JJ., concur. Deen, P. J., McMurray, P. J., Benham and Beasley, JJ., dissent.*

McMurray, Presiding Judge, dissenting.

I would affirm the judgment of the trial court as I find no error in allowing the pediatrician to express her opinion concerning the sexual molestation of the child. Medical opinions concerning a patient's physical condition are admissible in evidence even when they are based, at least in part, upon the history elicited from the patient. *State v. Beeson*, 434 P2d 460, 461 (Or. 1967). See also *Petty v. Folsom*, 229 Ga. 477 (192 SE2d 246). Why? Because "[w]hat a physician hears from a patient is not hearsay as to the fact of the conversation, and is part of his observation, as distinguished from the truth of the content, or as distinguished from what he hears of the patient from others." *Petty v. Folsom*, 229 Ga. 477, 480, supra. See also *Fields v. State*, 221 Ga. 307, 309 (2) (144 SE2d 339). The key to admissibility is whether the statements elicited from the patient are of a kind normally relied upon by the physician in his particular field of expertise, *State v. Steelman*, 585 P2d 1213, 1230 (Ariz. 1978), and whether the statements are of help to the physician in his diagnosis. *State v. Contreras*, 253 A2d 612, 619 (R.I. 1969).

In the case sub judice, the pediatrician expressed her opinion as to whether the child had been sexually molested. Her opinion was based upon her physical findings and the statements elicited from the child during the examination. The child's statements aided the pediatrician in her diagnosis; they were of a kind normally relied upon by pediatricians; and they were consistent with the pediatrician's physical findings. Accordingly, I think the trial court properly permitted the pediatrician to testify that in her opinion the child had been sexu-

ally molested. The weight of the pediatrician's opinion was a matter to be determined by the jury. *Petty v. Folsom*, 229 Ga. 477, supra at p. 481; *Redfield v. State*, 240 Ga. 460 (1) (241 SE2d 217).

I am authorized to state that Judge Beasley joins in this dissent.

BENHAM, Judge, dissenting.

While I agree with the majority in Divisions 1, 3, and 4, I must depart from the fold on Division 2 and plot a new course. The majority's position on Division 2 represents a shortfall on a very significant issue — testimony of children in abuse cases.

I differ from the dissent of Presiding Judge McMurray because it would admit the testimony as being relevant to the proper diagnosis. However, appellant's enumeration goes deeper than this analysis. While the ultimate issue is one of child molestation, the evidence was offered by the State on the issue of truthfulness, and I choose not to sidestep the issue but to face it head-on as it is presented in the appeal.

This court is presented with the problem of determining the admissibility of expert testimony on the interpretation to be given to the testimony of a young child as to sexual abuse. Our Supreme Court dealt with the issue of expert testimony in *Smith v. State*, 247 Ga. 612 (277 SE2d 678) (1981), where expert testimony was admitted on the novel "battered wife syndrome." While identification of the problem is new, it, like so many other problems, has been with us for ages. Here, we deal not with a novel concept but with an age-old problem, alleged sexual abuse of a child. However, the rule of *Smith*, at 619, is equally applicable: "Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves." The traditional objection to expert testimony is that it invades the province of the jury. *Mitchell v. State*, 154 Ga. App. 399 (3) (268 SE2d 360) (1980).

The analytical undergirding of *Smith* is *Metropolitan Life Ins. Co. v. Saul*, 189 Ga. 1, 9 (5 SE2d 214) (1939), which states: "[W]e think it is . . . true that if the nature of the question is such that the factors leading to a conclusion are not known to the common or average man, but are among those things shrouded in the mystery of professional skill or knowledge, then the light of that knowledge should not be withheld from the jury because of such a fine distinction in the ordinary rules of evidence." The basis for allowing expert testimony is to aid the jury in understanding a subject or issue not usually within the knowledge of lay persons. In *Smith*, expert testimony was allowed to shed light on the phenomenon known as the "battered wife syndrome." The court there found that it was error to exclude such testimony because it would have supplied an interpretation of the facts

that differed from the ordinary lay perception.

After reviewing the major cases on the topic, *Smith v. State*, supra; *Sinns v. State*, 248 Ga. 385, 387 (283 SE2d 479) (1981); *Metropolitan Life Ins. Co. v. Saul*, supra; *Fordham v. State*, 254 Ga. 59, 60 (325 SE2d 755) (1985); and *Williams v. State*, 254 Ga. 508 (330 SE2d 353) (1985), I am of the opinion that the rule of *Smith* needs some further refinement which will encompass the meaning of these other cases. In deciding the issues upon which jurors may not be able to make independent assessments and upon which the testimony of an expert is needed, the court should determine if (1) the issue is so complex as to be beyond the ordinary knowledge of lay persons; or (2) so phenomenal in nature as to lend itself to gross misconceptions without the benefit of expert testimony.

In the case-in-chief, the lay perception is that children have vivid imaginations and conjure up weird tales. See *Personality in the Making: The Fact-Finding Report of the Mid-Century White House Conference on Children and Youth*, Helen Leland Witmer and Ruth Kotinsky, eds., Harper & Row, 1952, pp. 15-16. The expert testimony of Dr. Fleming was offered to show a phenomenon not normally within law perceptions, i.e., children of tender years do not fantasize about sexual encounters. Therefore, the offered testimony fits squarely within the *Smith* rule, and the weight to be given such opinion should remain within the province of the jury with proper instructions from the court.

I am authorized to state that Presiding Judge Deen joins in this dissent.

DECIDED FEBRUARY 13, 1986 —
REHEARING DENIED MARCH 5, 1986 —

*Thomas C. Sanders*, for appellant.

*William A. Foster III, District Attorney, Penny J. Udolf, Christine C. Daniel, Assistant District Attorneys*, for appellee.